IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JUAN DEMOND CALAMEASE, § <br> Petitioner, § <br> § <br> V. § <br> § <br> LORIE DAVIS, Director, § <br> Texas Department of Criminal Justice, § <br> Correctional Institutions Division, § <br> Respondent. § | Civil Action No. 4-16-CV-1022-O |

## **OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Juan Demond Calamease, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

**I. BACKGROUND**

In December 2014 in Tarrant County, Texas, Case No. 1383069, Petitioner was charged with possession with intent to deliver two hundred grams or more but less than four hundred grams of cocaine (count one) and possession of two hundred grams or more but less than four hundred grams of cocaine (count two). SHR[1] 53, ECF No. 18-4. The indictment also included a deadly-weapon-finding notice and a repeat-offender notice. *Id.* On June 19, 2015, pursuant to a plea agreement, the state waived count one and the repeat-offender notice, Petitioner pleaded guilty to count two with a deadly weapon, and the trial court sentenced him to nine years' confinement in TDCJ. *Id.* at 55-61. Petitioner did not appeal his conviction but did challenge the conviction in a post-conviction state

---

[1]"SHR" refers to the record of Petitioner's state habeas-corpus proceeding in WR-84,791-02.

habeas-corpus application, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. *Id.* at 2-18 & Action Taken, ECF No. 18-3.

## II. ISSUES

In this federal petition, Petitioner raises three grounds for relief, in which he claims that (1) his restraint is unlawful because the state trial court could not prosecute him as the principle actor; (2) the deadly-weapon finding is invalid because he never had care, custody or management of the contraband and firearm; and (3) his restraint is unlawful because of ineffective assistance of counsel based on counsel's failure to take an active role in the investigation of the case, advise and aid him in the development of a trial strategy, and explain the law of parties and the effect of a deadly-weapon finding on his eligibility for parole. Pet. 6-7, 10, ECF No. 1.

## III. RULE 5 STATEMENT

Respondent believes that Petitioner exhausted his claims in state court and that the petition is neither untimely nor subject to the successive-petition bar. Resp't's Answer 3, ECF No. 10.

## IV. STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(d)(1)–(2). Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1)

provides that a determination of a factual issue made by a state court shall be presumed to be correct. It is the petitioner's burden to rebut the presumption of correctness through clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Finally, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief on a state habeas-corpus application without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* --- U.S. ---, 138 S. Ct. 1188, 1191-92 (2018).

## V. DISCUSSION

Notwithstanding Petitioner's claims, a valid guilty plea waives all nonjurisdictional defects in the proceedings against a defendant preceding the plea, including claims of ineffective assistance that do not attack the voluntary nature of the plea. *See Tollett v. Henderson,* 411 U.S. 258, 267 (1973); *Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir. 1983). To prove ineffective assistance of counsel, the defendant must prove that his counsel's performance was both deficient and prejudicial to him. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). In the context of a guilty plea, the defendant must show that, but for his counsel's errors, he would not have pleaded guilty and would have insisted upon going to trial. *Hill,* 474 U.S. at 57-58; *Joseph v. Butler,* 838 F.2d 786, 791 (5th Cir. 1988). If a challenged guilty plea is knowing and voluntary, it will be upheld on federal habeas review. *James v. Cain,* 56 F.3d 662, 666 (5th Cir. 1995).

Further, when reviewing a record, a court must give a signed, unambiguous plea agreement

great evidentiary weight and the state court records are entitled to a presumption of regularity. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir.), *cert. denied,* 513 U.S. 1064 (1994); *Webster v. Estelle,* 505 F.2d 926, 929-30 (5th Cir. 1974). Although a defendant's attestation of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. *United States v. Diaz*, 733 F.2d 371, 373-74 (5th Cir. 1979).

Petitioner asserts that he "felt coerced and compelled" to enter his plea because his trial counsel "had no intrest [sic] in promoting a[] defense other than a plea bargain," failed to advise him regarding the law of parties and the effect of a deadly-weapon finding on his eligibility for parole, and told him "that a jury would convict him because of his past criminal history and the statement of his codefendant who already pled to the charge." Pet. 10, ECF No. 1; Pet'r's Resp. 1, ECF No. 11. Petitioner also asserts that "[t]he ramifications of going to trial was to [sic] much and forced [him] to plea to a charge he was not guilty of." Pet'r's Resp. 1, ECF NO. 11.

In the state habeas proceedings, counsel responded to Petitioner's allegations in two affidavits as follows (all omissions and/or errors in punctuation are in the original):

> [Petitioner] . . . hired my services on October 2, 2014 for a controlled substance case with intent to deliver. [Petitioner] also had a pending Arson case, but had another attorney representing him on it. I made eight appearances for him. He signed a trial contact on February 10, 2015.
>
> On October 28, 2014 at an appearance docket, the state conveyed a 25 year TDCJ offer. This offer was extended till December 31, 2014. I requested [Petitioner] to make an appointment as soon as he could. I picked up media, 2 discs, which included in-car video. I conveyed all offers.
>
> On December 10, 2014, [Petitioner] came into the office and we reviewed all the discovery on the case, including the police reports and media. A gun was found under [Petitioner]'s front driver wheel. Police claimed they saw [Petitioner] place it there. [Petitioner] was behind the steering wheel and the vehicle was parked along a curb in a residential neighborhood. [Petitioner] did step out of the vehicle and was

4

detained trying to approach the car. [Petitioner] initially told me that he was only paid to give the co-defendant a ride. According to the police reports, co-defendant informed the "cooperating citizen" that they could sell eight ounces of cocaine, but [Petitioner], who was identified as a cousin, is the one with the drugs while the co-defendant was acting as a middleman.

A new offer was conveyed to accept 10 years TDCJ on Unlawful Possession of a Firearm by a Felon. It was clear the State knew they could have filed a weapon charge. This was another factor for [Petitioner] to consider. [Petitioner] was informed. [Petitioner] had missed court and efforts were difficult to work this case out because the attorney for [Petitioner]'s other case was not present during my time in the courtroom. The judge set a court date in May 2015 for both attorneys to appear.

The offer was brought back to twenty years TDCJ. I was informed the co-defendant had pled. I learned a record of the co-defendant's plea with his testimony was made. The testimony by the co-defendant stated he had no knowledge of the gun, and that he, the co-defendant was the middleman. [Petitioner] informed me, that if the State would make a reasonable offer, he may take it.

On May 13, 2015, [Petitioner] gave me money for an investigator to go into the jail with me to speak to the now pled co-defendant, which I have provided a receipt of this payment, . . . In my visit, on May 14, 2015, it was clear co-defendant would testify against [Petitioner]. Co-defendant denied the drugs or gun being his. He claimed a "snitch" called and hooked him up with [Petitioner]. He felt he was caught in the middle. He informed me that he will testify against [Petitioner] and his testimony would hurt [Petitioner]. This information was conveyed to [Petitioner].

On May 15, 2015, an offer of nine years TDCJ was conveyed only if taken before trial date of 6/22/2015. On May 19, 2015, [Petitioner] pled and his Arson case was pled in bar.

With every single client, I completely go over the plea papers. I read it to them. No exceptions, and each page is discussed. [Petitioner]'s case was reduced to possession without intent allowing a reduction in the plea bargain. The state would not waive the deadly weapon finding, which was discussed with [Petitioner].

I honestly convey my opinion to my clients, including this client, on the weight of the case. Initially I told [Petitioner] his drug case was reasonable to fight, especially since the plea bargain was so high. Co-defendant told a snitch the buy was for [Petitioner]. The drugs were found on codefendant but [Petitioner] was arrested as a party to the crime. With the offer being reduced to nine years, I discussed [Petitioner]'s options of going to trial and facing fifteen to life or taking this plea bargain. He was also reminded that co-defendant will be brought in to testify.

5

> I investigated the case. I prepped the case for trial and I advised the client at all times. Other than officers, co-defendant, and an unknown "co-operating citizen" there were no other witnesses. I would file a motion to disclose the informant, if [Petitioner] had refused the plea bargain. However, that would have been risky based on co-defendant's foreseen testimony.
>
> Trial strategy was developed. It became apparent it was risky to go to trial. [Petitioner]'s decision was voluntary and he waived his rights to fight his case. I informed him with all the pros and cons. I supported [Petitioner]'s decision because of the enhancement and the plea offer was reduced from twenty-five years to nine years. I do not make the decisions for my client. His plea was voluntarily taken and waived his right to his trial.
>
> . . .
>
> On May 19, 2015, date of plea, we were in court discussing the offer. [Petitioner] was upset with the weapons finding as part of the plea bargain. I re-approached the Assistant DA and tried to negotiate the weapons finding to be removed. [Petitioner] understood the ramifications of it being in the plea. The state would not drop the weapons finding. The decision was conveyed to be his decision alone. Either go to trial or accept the plea with the weapons finding. Our discussion with it would require him to do one half of his time before being eligible for parole. He was not happy but he accepted the plea.

SHR 33-36, ECF No. 18-4.

Finding counsel's testimony credible and supported by the record, the state habeas court found that Petitioner "was the actor and not a party" in the crime and that counsel read the written plea admonishments to Petitioner; discussed with Petitioner the ramifications of a deadly-weapon finding on parole eligibility; informed Petitioner of the pros and cons of going to trial versus pleading guilty; determined that Petitioner's plea was voluntary; and supported Petitioner's decision because the plea offer was less than the minimum he was facing at trial. *Id.* at 41. Based on its findings, the state court concluded that counsel properly advised Petitioner on the relevant legal matters and that Petitioner had failed to prove ineffective assistance of counsel. *Id.* at 44-45.

Petitioner presents no "clear and convincing evidence" in rebuttal.[2] 28 U.S.C. § 2254(e)(1). Thus, this Court must apply the presumption of correctness to the state court's factual findings, including the court's credibility finding. Having done so, Petitioner's claim that he was coerced or compelled into entering his plea and/or that his plea was the result of ineffective assistance of counsel is groundless. Petitioner's conclusory assertions, after the fact, are insufficient to rebut the presumption that he received effective assistance of counsel and the presumption of regularity of the state court records. It is clear from the record that based on the trial court's and counsel's interaction with Petitioner, both the judge and counsel were under the opinion that Petitioner understood all the circumstances concerning his plea and, albeit reluctantly, wanted to proceed with his plea. Petitioner reinforced this belief by executing the written plea admonishments acknowledging that he was aware of the consequences of his plea; that his plea was knowingly, freely, and voluntarily entered; that no one threatened, coerced, or forced him to plead guilty; and that counsel provided him "fully effective and competent representation." SHR 57-58, ECF No. 18-4. Such representations "carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74 (1977). Counsel's obligation is to inform a criminal defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would forgo. *Libretti v. United States,* 516 U.S. 29, 50-51 (1995). Often a criminal defendant, even if he is unwilling or unable to admit his guilt, will agree to plead guilty to an offense, having been so informed by counsel, in order to avoid a potentially harsher sentence by a judge or jury. Such a decision on the part of a defendant does not

---

[2] Petitioner presents for the first time in this federal proceeding a copy of the "Sworn Statement of Seizing Officer" in support of his assertion that the deadly-weapon finding was invalid because he never used or exhibited the firearm, which was found on the ground. Pet. 10-12, ECF No. 1. However, federal habeas review is limited to the record that was before the state court that adjudicated the claim(s) on the merits. *Cullen Pinholster,* 563 U.S. 170, 181 (2011); *Brown v. Thaler,* 684 F.3d 482, 497 (5th Cir. 2012) *cert. denied,* 568 U.S. 1164 (2013).

render counsel's representation deficient or a plea involuntary. *See North Carolina v. Alford,* 400 U.S. 25, 37 (1970); *Brady v. United States,* 397 U.S. 742, 749-50 (1970).

Because Petitioner's guilty plea was knowingly and voluntarily made, his claims involving matters preceding the plea are waived.

## VI. CONCLUSION

For the reasons discussed, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. §254 is DENIED. Further, for the reasons discussed, a certificate of appealability is DENIED.

**SO ORDERED** on this 11th day of September, 2018.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**